# SETTLEMENT AGREEMENT

# BETWEEN

# THE UNITED STATES OF AMERICA

# AND

# THE NEW YORK CITY POLICE DEPARTMENT

WHEREAS, this matter was initiated by complaints filed pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131-12134, alleging, inter alia, that New York City Police Department ("NYPD" or the "Department") employees, including police officers, did not effectively communicate with people with hearing impairments in violation of Title II of the ADA;

WHEREAS, the NYPD does not admit and denies any and all liability arising out of the allegations contained in these complaints;

WHEREAS, one of the individual complainants has reached a separate agreement releasing the NYPD in consideration for a payment that the complainant has received from the NYPD;

WHEREAS, the United States of America, through the United States Department of Justice, United States Attorney's Office, Southern District of New York, (the "United States") is authorized under 28 C.F.R. Part 35 to investigate whether the NYPD is in compliance with Title II of the ADA;

WHEREAS, the NYPD is an agency of the City of New York, a "public entity" for purposes of 42 U.S.C. § 12132 and the implementing regulations, 28 C.F.R. § 35.104, et seq., and the United States Department of Justice is the "designated agency" responsible for investigating the complaint, 28 C.F.R. § 35.190(b)(6); WHEREAS, the United States is authorized to investigate the facts, issue findings and, where appropriate, attempt informal resolution of such complaints, see 28 C.F.R. § 35.170-172;

WHEREAS, the United States and the NYPD have the mutual goal of ensuring that the NYPD complies with the requirements of Title II of the ADA;

IT IS HEREBY AGREED between the NYPD and the United States:

1. This Settlement Agreement (the "Agreement") is entered into pursuant to 28 C.F.R. § 35.172.
2. In consideration for the NYPD's performance of its obligations under this Agreement, the United States agrees to refrain from undertaking further investigation or from filing a civil suit based on the complaints described above.

## POLICY AND DEFINITIONS

3. The NYPD has adopted the Interim Order to the NYPD's Patrol Guide entitled "Interaction with Hearing Impaired Persons." A copy of the Interim Order is attached as Exhibit A. This Interim Order has been

    made available to all members of the Police Department.

4. In order to comply with the ADA, the NYPD must continue to take appropriate steps to ensure that its communication with qualified individuals with a disability, consisting of a hearing impairment (hereafter "qualified individual(s) with hearing impairments" or "qualified individual(s)") is effective communication. The parties agree and stipulate that certain terms will be defined for purposes of this Agreement:

   A. "Auxiliary aids and services" will mean qualified interpreters, note takers, transcription services, written materials, telephone handset amplifiers, assistive listening devices, telephones compatible with hearing aids, closed caption decoders, open and closed captioning, Telecommunications Devices for the Deaf (TDDs), videotext displays, or other effective methods of making aurally delivered materials available to individuals with hearing impairments. See 28 C.F.R. § 35.104.

   B. "Disability" and "Qualified individuals with a disability" will be defined as they are in the ADA, 42 U.S.C. § 12102(2), and 42 U.S.C. § 12131(2), respectively.

   C. "Qualified interpreter" will mean and refer to a sign language or oral interpreter who is able to interpret effectively, accurately, and impartially, both receptively and expressively, using any necessary specialized vocabulary. Accordingly, an interpreter must be able to sign to the deaf individual (or interpret orally to the person who does not use sign language) what is being said by the hearing person and to voice to the hearing person what is being signed or said by the deaf individual. The interpreter must be able to interpret in the language the deaf person uses (e.g., American Sign Language or Signed English) and must be familiar with terms and phrases commonly used during booking and detention. Additionally, although a qualified interpreter may be certified, a certified interpreter is not necessarily qualified, if he or she is not a good communications match for the deaf person (e.g., where the deaf person uses Signed English and the interpreter uses American Sign Language) or the situation (e.g., where the interpreter is unfamiliar with the necessary specialized vocabulary).

   D. "Effective communication" will mean communication with persons with disabilities that is as effective as communication with others. Effective communication is achieved by furnishing appropriate auxiliary aids and services where necessary to afford qualified individuals with a disability an equal opportunity to participate in or benefit from the services, programs, or activities of a public entity.

5. In order to ensure the continued effective communication with qualified individuals with hearing impairments in the NYPD's programs, activities and services, the NYPD will:

   a. Continue to ensure that its services, programs and activities are accessible to qualified individuals with hearing impairments, as required by 28 C.F.R. § 35.161, through the use of appropriate auxiliary aids and services, including, but not limited to, the City of New York's "311" non-emergency system (TTY No. 212-504-4115), via the nationwide Telecommunications Relay Service "711", or qualified sign language interpreters. In a situation where the NYPD would allow a person access to a telephone, the NYPD shall provide qualified individuals with hearing impairments the opportunity to place calls through the use of appropriate auxiliary aids and services, including, but not limited to, qualified sign language interpreters.

   b. Continue to provide, at no cost to the qualified individual with a hearing impairment, appropriate auxiliary aids and services, including, but not limited to, qualified interpreters, when necessary to provide effective communication to qualified individuals with hearing impairments. See Exhibit A. In determining whether a qualified interpreter is required, consideration should be given to the nature and importance of the communication at issue, the complexity or length of the communication, and such other factors as are appropriate within the discretion of the NYPD. The NYPD shall continue to maintain a list of "on-call" qualified sign language interpreters who are available 24 hours a day. The NYPD shall provide a qualified sign language interpreter within a reasonable time after the request is made. Sign language services, whether through use of the NYPD's "on-call" list or though the New York Citywide Contract, shall be available 24 hours a day.

   c. Give primary consideration to the requests of qualified individuals with hearing impairments in determining what type of auxiliary aid or service is necessary. "Primary consideration" means that the NYPD will defer to the individual's request, consistent with the NYPD's duties pursuant to 28 C.F.R. § 35.164.

d. The NYPD will provide notice of the availability of auxiliary aids and services for qualified individuals with hearing impairments through the distribution of pamphlets, posters or other appropriate means, including, but not limited to "The Americans with Disabilities Act What You Should Know," attached hereto as Exhibit B.

## ADA COORDINATOR

6. The NYPD's ADA Coordinator is the Deputy Commissioner, Equal Employment Opportunity. The ADA Coordinator (or her designee) shall:
    a. Be familiar with the process for requesting a qualified sign language interpreter;
    b. Annually either attend a seminar concerning a public entity's obligations under Title II of the ADA, or view an educational video concerning a public entity's obligations under Title II of the ADA. The United States shall provide a list of seminars and videos which shall be acceptable to the United States, which list shall include the video program entitled "Police Response to People With Disabilities," available online at: www.ada.gov/policeinfo.htm. This list shall be provided to the NYPD, attention the Deputy Commissioner, Equal Employment Opportunity within thirty (30) days of the execution of this Agreement and annually thereafter.

## GRIEVANCES

7. The NYPD has adopted the Administrative Guide Procedure No. 308-06: Grievance Procedure for Members of the Public with Disabilities, attached hereto as Exhibit C, as amended, in connection with this Agreement (the "ADA Grievance Procedure"). The NYPD has published this procedure and amendment. Within thirty (30) days of the effective date of this Agreement, the NYPD will post a copy of the Notice entitled "The Americans with Disabilities Act What You Should Know," attached hereto as Exhibit B in those places where notices to the public, employees and job applicants are normally posted. A copy of Exhibit B will also be provided to any person upon request. If a qualified individual with a hearing impairment files a written grievance with the NYPD's ADA Coordinator, in accordance with the ADA Grievance Procedure, the ADA Coordinator will attempt to resolve the grievance according to the procedures set forth in the ADA Grievance Procedure.
8. For a period of three (3) years from the effective date of this Agreement, the NYPD shall send the United States, on an annual basis, a letter containing the following information:
    a. The number of written grievances that have been filed during the relevant reporting period with the ADA Coordinator pursuant to the ADA Grievance Procedure, by persons with hearing impairments in regard to the availability of auxiliary aids and services for qualified individuals with hearing impairments;
    b. A brief, general description of the nature of each grievance; and
    c. A brief, general description of the nature of how each grievance was resolved.

## TRAINING

9. The NYPD shall continue to train all new recruits, supervisory personnel, and executive level staff in the Department regarding the NYPD's policies and procedures concerning qualified individuals with hearing impairments. Beginning with the next recruit or promotional classes following the effective date of this Agreement, the training shall include:
    a. The Interim Order entitled "Interaction With Hearing Impaired Persons," attached hereto as Exhibit A and all other Patrol Guide procedures cross-referenced therein;
    b. The Administrative Guide Procedure No. 308-06: Grievance Procedure for Members of the Public With Disabilities, attached hereto as Exhibit C;
    c. The Pamphlet entitled "Communicating With People Who Are Deaf or Hard of Hearing," attached hereto as Exhibit D;
    d. The Student Assessment Guide, entitled, "The Americans with Disabilities Act and Law Enforcement," attached hereto as Exhibit E.

## ENFORCEMENT

10. The NYPD will report annually to the United States on compliance with this Agreement in accordance with the provisions of paragraph 8, herein. If the United States believes that this Agreement or any portion of it has been violated, within four months of receiving notice of an alleged violation, the United States will notify the undersigned counsel in writing and provide the basis and evidence for the claim of noncompliance. Within thirty (30) days of such notice, counsel for the parties shall meet and confer in an attempt to resolve the issue or issues in good faith. The United States will give the NYPD forty-five (45) days from the date that it notifies the NYPD of any breach of this Agreement to cure that breach, prior to instituting court action, if any. This forty-five (45) day period may be extended by agreement of the parties. If the parties are unable to reach a satisfactory resolution of the issue or issues raised, the United States may, if necessary, take steps to enforce the terms of this Agreement, and the NYPD may oppose.
11. This Agreement is neither an admission by the NYPD of any violation of the ADA, nor an admission by the United States of the merits of any of the NYPD's potential defenses.
12. The NYPD shall not discriminate or retaliate against any person because of his or her participation in this matter.
13. This Agreement is a public document.
14. The Effective Date of this Agreement is the date of the last signature on the Agreement.
15. The term of this Agreement is three (3) years from the Effective Date.
16. The individuals signing this Agreement represent that they are authorized to bind the parties to this Agreement.
17. Failure by the United States to enforce the entire Agreement with regard to any deadline or any other provision of the Agreement, shall not be construed as a waiver of its right to enforce other deadlines or provisions of the Agreement.
18. This Agreement constitutes the entire agreement between the parties relating to the complaints, and no other statement, promise, or agreement, either written or oral, made by either party or agents of either party, that is not contained in this Agreement, shall be enforceable.

For the United States:

PREET BHARARA
United States Attorney for the Southern District of New York

By: _____   Date: _____11/18/09_____
SARAH E. LIGHT
Assistant United States Attorney
Southern District of New York
86 Chambers Street, 3rd Floor
New York, NY 10007

For the NYPD:

By: _____   Date: _____11/18/09_____
DEBORAH ZOLAND
Assistant Deputy Commissioner,

Legal Matters New
York City Police Department
1 Police Plaza New York, NY

Cases & Matters by ADA Title Coverage | Legal Documents by Type & Date | ADA Home Page

June 14, 2010